# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

STEPHANIE BANIK,
  Plaintiff

   vs

COMMISSIONER OF
SOCIAL SECURITY,
  Defendant

Case No. 1:11-cv-342
Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

   Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications

for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is

before the Court on plaintiff's Statement of Errors (Doc. 13), the Commissioner's response in

opposition (Doc. 16), and plaintiff's reply memorandum. (Doc. 17).

## I. Procedural Background

   Plaintiff filed applications for DIB and SSI in September 2007, alleging disability since

October 23, 2006. (Tr. 147). Plaintiff's applications were denied initially and upon

reconsideration. Plaintiff, through counsel, requested and was granted a de novo hearing before

administrative law judge (ALJ) Deborah Smith. Plaintiff, along with a vocational expert (VE),

appeared and testified at the ALJ hearing. On April 14, 2010, the ALJ issued a decision denying

plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was

denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Medical Evidence[1]

   In March 2002, plaintiff was struck by a "slow moving car" (Tr. 490-502) and

subsequently complained of extremity pain. (Tr. 492, 496). X-ray results were normal. (Tr.

217, 497, 500-02). Plaintiff treated with Glenn Reinhart, M.D., of Freiburg Orthopaedics &

---

[1] Though the administrative record contains mental health records, as plaintiff has not raised any issues on appeal regarding this evidence, it will not be recited herein.

Sports Medicine and Dr. Zeff of the Freiberg Spine Institute for her ongoing knee, back, and leg pain. (Tr. 256-73, 503-06). Plaintiff's treatment included medication, physical therapy, epidural steroid injections, and a discectomy. (Tr. 261, 267-69, 271-73). Plaintiff was seen by Dr. Zeff in October 2003 after her discectomy at which time she reported that she "currently does not have any pain at all and is able to sit, stand, and walk without any pain." (Tr. 261). Dr. Zeff noted that plaintiff was "doing much better since her percutaneous decompression[,]" *id.*, and, in December 2003, reported that she was "doing quite well" and released her to return to work with no restrictions. (Tr. 260).

The record also contains treatment notes from primary care physician, John Leisgang, M.D., dated from June 2007 through March 2010. (Tr. 275-88, 403-83, 617-31). Dr. Leisgang treated plaintiff for cervical and lumbar degenerative disc disease with radiculopathy, spinal stenosis, left shoulder rotator cuff tear, cellulitis, edema, venous insufficiency, left foot and ankle arthritis, varicose veins, anxiety, hypertension, high cholesterol, hypothyroidism, glucose intolerance, allergies, sinusitis, and asthma with asthmatic bronchitis. *Id.*

Due to complaints of worsening low back pain, Dr. Leisgang ordered an MRI of plaintiff's lumbosacral spine. (Tr. 279, 285). The lumbosacral spine MRI taken on August 29, 2007, revealed mild lumbar spur and moderate lower lumbar facet osteoarthritis with Grade 1 degenerative anterior listhesis of L4 relative to L3 and L5. (Tr. 285). Plaintiff had an MRI of her left shoulder taken on October 12, 2007, which revealed a full-thickness tear of the supraspinatus tendon, subacromial/subdeltoid bursitis, and a fragment of bone and a bone spur projecting into the inferior of the acromion. (Tr. 283, 300). A cervical spine MRI on the same date revealed multilevel cervical degenerative disc disease which was most significant at C5-6 with disc herniation and mild to moderate left C6 foraminal stenosis and reduction of the spinal

2

canal to 10 mm. (Tr. 281, 302). Dr. Leisgang's treatment notes include findings that plaintiff had a decreased range of motion in her cervical spine, decreased abduction of her left shoulder, sciatica and pain in the lumbosacral area, edema of her hands and/or lower extremities, redness and/or chronic venous stasis changes to her right anterior tibia, signs of venous insufficiency, and wheezing. (Tr. 277, 279, 404, 422, 434, 437, 443, 453-54, 460, 464, 478).

Plaintiff returned to Dr. Zeff on November 8, 2007, complaining of neck and left arm pain. Dr. Zeff found that plaintiff had reduced range of motion in her neck, a positive Spurling maneuver, and reduced reflexes in her upper extremities, and he diagnosed cervical facet joint syndrome. Dr. Zeff recommended that she use a muscle stimulator and begin receiving facet joint injections. (Tr. 259).

Plaintiff was examined by Martin Fritzhand, M.D., on December 4, 2007. (Tr. 224-32). Plaintiff reported a history of persistent and gradually increasing low back pain since she was hit by a motor vehicle in March 2002. (Tr. 224). She complained that her pain occurred "most of the time" and radiated into her left hip and leg. *Id.* Plaintiff ambulated with a normal gait and had good range of motion and normal muscle strength with no evidence of muscle atrophy. (Tr. 225). Plaintiff had no joint abnormalities. Her neurological examination was "completely normal," except that her Achilles tendon reflexes were absent bilaterally. (Tr. 225-26). Dr. Fritzhand noted that he was unable to assess spine curvature or palpate underlying abdominal viscera due to plaintiff's obesity. *Id.* She could forward bend to 90 degrees, stand on either leg without difficulty, and had no difficulty squatting. (Tr. 226). Her spinal extension was diminished to 10 degrees, but lateral motion of the spine was normal to 30 degrees bilaterally. *Id.* Dr. Fritzhand diagnosed plaintiff with exogenous obesity, degenerative joint disease in the lumbar spine, chronic low back pain, history of Grade I anteriolisthesis of L4, and a history of

3

multi-level cervical degenerative disc. *Id.* Dr. Fritzhand opined that obesity contributes to plaintiff's symptoms and weight reduction would diminish her complaints. *Id.* According to Dr. Fritzhand, plaintiff was capable of a moderate amount of sitting, walking, standing, bending, pushing, pulling, lifting, and carrying heavy objects. (Tr. 226-27).

Plaintiff presented to Dr. Zeff's office on December 6, 2007 with complaints of left arm pain. She also reported occasional numbness in her left hand. She underwent an electrodiagnostic study to rule out peripheral nerve entrapment versus radiculopathy. The EMG was "normal" and showed no evidence of radiculopathy, neuropathy, or myopathy. (Tr. 258).

On December 14, 2007, non-examining state agency physician, Kathryn Drew, M.D., completed a residual functional capacity (RFC) assessment. (Tr. 233-40). Dr. Drew concluded that plaintiff was capable of performing a full range of medium work.[2] *Id.*

In January 2008, plaintiff complained to Dr. Zeff of bilateral hip pain and left shoulder pain. (Tr. 257, 308). On examination, plaintiff exhibited pain on external rotation of her hips, reduced reflexes in her lower extremities, and a positive impingement sign in her left shoulder. *Id.* Dr. Zeff reviewed x-rays of plaintiff's hips and left shoulder and opined that plaintiff had osteoarthritis of both hips and a left rotator cuff tear. *Id.* Dr. Zeff administered steroid injections to plaintiff's left shoulder and both hips. *Id.* Plaintiff continued to treat with Dr. Zeff through 2008 for her neck, low back, legs, and left shoulder. March and June 2008 examinations revealed pain with flexion of plaintiff's lumbar spine, reduced range of motion of her cervical spine, pain with abduction and external rotation of her left shoulder, a positive Spurling maneuver, and reduced reflexes. (Tr. 306-07). Dr. Zeff diagnosed lumbar spine degenerative

---

[1]The Regulations define medium work as involving the ability to lift "no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds...." 20 C.F.R. §404.1567(c).

disc disease with radiculopathy, facet joint arthritis of the lumbar spine, cervical spine degenerative disc disease, and bilateral rotator cuff tendonitis, and he administered more steroid injections. (Tr. 306-07, 393-94, 508-09, 516, 544, 546, 561).

Willa Caldwell, M.D., another state agency physician, reviewed the record in May 2008 and opined that plaintiff was capable of medium work. But, she found that plaintiff should not perform jobs that required more than frequent crouching, crawling, or overhead reaching with plaintiff's left arm. (Tr. 289-97).

A September 24, 2008 examination and x-ray demonstrated diffuse soft tissue swelling of plaintiff's left ankle; minimal hypertrophic spurring of the medial and lateral malloli; hypertrophic spurring of metatarsal joints; calcaneal bone spurs; and no acute fracture. (Tr. 312-15).

Plaintiff was hospitalized for 10 days in November 2008 and diagnosed with necrotizing cellulitis[3] in her right lower extremity. (Tr. 329-74; 481-82). While in the hospital, plaintiff was treated by an infectious disease specialist, Thomas Lamarre, Jr., M.D., who diagnosed moderately severe right lower extremity cellulitis (consistent with beta hemolytic streptococcus) with associated lymphangitis and inguinal adenopathy, in the setting of venous insufficiency, chronic lymphedema, and tinea pedis. (Tr. 333-39). During her hospitalization, plaintiff was treated with IV antibiotics, elevation, compression dressings, and Silvadene. (Tr. 329-30).

Plaintiff continued to treat with Dr. Lamarre through March 2009. (Tr. 377-88). Dr. Lamarre observed that plaintiff's cellulitis was resolving. His findings were consistent with stasis dermatitis, lymphedema and ichthyosis. *Id.* He opined that vascular surgery would

---

[3] Necrotizing cellulitis is a flesh-eating bacterial skin infection which has spread into the fascial lining (deep layer of tissue). *See* www.mayoclinic.com/health/cellulitis/DS00450/DSECTION=complications (last visited May 14, 2012).

probably not provide much benefit. He recommended plaintiff apply prescription strength cream to the affected area, apply petroleum jelly and a dressing to the dry areas, and wear compression hose. (Tr. 378-79).

Dr. Leisgang admitted plaintiff to the hospital in January 2010 for asthmatic bronchitis, acute sinusitis, hypertension, and syncope. (Tr. 579-614). Plaintiff also complained of epigastric pain and was found to have diverticulosis and hepatosplenomegaly. (Tr. 579). She was treated with antibiotics and breathing treatments. *Id.*

On January 25, 2010, Dr. Leisgang saw plaintiff for hospital follow up. (Tr. 619-20). Plaintiff reported her asthma had improved with use of an inhaler. *Id.* Dr. Leisgang noted that plaintiff had not returned to Dr. Zeff and had not received an epidural injection in approximately one year. *Id.* Dr. Leisgang also approved plaintiff for an Ohio Bureau of Motor Vehicle placard for people with disabilities. (Tr. 618).

Also, Dr. Leisgang completed an assessment form on January 25, 2010, regarding plaintiff's abilities to do work-related activities. (Tr. 485-87). Dr. Leisgang noted that his opinions were based on medical findings of plaintiff' low back pain subsequent to the 2002 accident, decreased range of motion of her left shoulder and cervical spine, aching in her lumbar spine and hips, and asthma. *Id.* Dr. Leisgang opined that plaintiff is limited to occasionally lifting and/or carrying ten pounds, and that she can stand and/or walk for one to two hours total out of an eight-hour work day, one hour without interruption. *Id.* Dr. Leisgang opined that due to her low back pain, plaintiff can sit for two hours total out of a normal eight-hour work day and one hour without interruption. (Tr. 486). Dr. Leisgang also opined that plaintiff is incapable of stooping, crouching, or crawling and is limited in her ability to reach, push and/or pull, and handle due to decreased range of motion of her neck and lower back. *Id.* Dr. Leisgang opined

6

that plaintiff should avoid unprotected heights, moving machinery, chemicals, temperature extremes, dust, and fumes. Finally, Dr. Leisgang opined that plaintiff is likely to be absent from work three days per month. (Tr. 487). He concluded that these limitations have applied since March 2002. *Id.*

In March 2010, Dr. Leisgang reported that he has been plaintiff's primary care physician in excess of ten years and that she has suffered from chronic venous insufficiency (CVI) of her right lower leg with incompetency of the deep venous system following her hospitalization in November 2008. Since that time, according to Dr. Leisgang, plaintiff has continued to suffer from extensive brawny edema starting from her right knee to her ankle which results in swelling and pain. Dr. Leisgang clarified that, even though it is not in his written notes, he has always recommended to plaintiff that she should elevate her leg above heart level as much as possible throughout the day. (Tr. 631).

## III. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson* v. *Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

> 2. The claimant has not engaged in substantial gainful activity since October 23, 2006, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).

> 3. The claimant has the following combination of impairments: osteoarthritis/degenerative joint disease; degenerative disc disease; and obesity (20 C.F.R. 404.1520(c) and 416.920(c)).

> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

> 5. After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c).

> 6. The claimant is capable of performing her past relevant work as a mail clerk and mail handler as generally performed. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

> 7. The claimant has not been under a disability, as defined in the Social Security Act, from October 22, 2006, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(Tr. 13-20).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ' s decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

Invoking Sentence Four of 42 U.S.C. §405(g), plaintiff argues that: (1) the ALJ erred by failing to accord sufficient weight to Dr. Leisgang's opinion; (2) the ALJ erred in finding that

plaintiff's right lower extremity venous insufficiency and left shoulder internal derangement[4] were not "severe" impairments; (3) the ALJ erred by failing to properly evaluate the applicability of Listing 4.11; (4) the ALJ erred in formulating plaintiff's RFC; and (5) the ALJ erred in discounting plaintiff's credibility. Plaintiff also seeks a remand under Sentence Six of 42 U.S.C. §405(g) for administrative consideration of certain new and material evidence.

1. The ALJ erred in finding that plaintiff's right lower extremity venous insufficiency was not a severe impairment.

Plaintiff contends the ALJ erred by finding that her right lower extremity venous insufficiency was not a severe impairment.

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). In the physical context, this means a significant limitation upon a plaintiff's ability to walk, stand, sit, lift, push, pull, reach, carry or handle. 20 C.F.R. §§ 404.1521(b)(1), 416.921(b)(1). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. § 404.1521(b). Plaintiff is not required to establish total disability at this level of the sequential evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff

---

[4] Plaintiff's Statement of Errors identifies that she is appealing the ALJ's finding that her left shoulder internal derangement was not a "severe" impairment. (Doc. 13, p. 9). However, plaintiff has provided no supporting argument addressing this error. Accordingly, this Report and Recommendation will only address the arguments which have been briefed by plaintiff. *See Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) (a plaintiff's failure to develop an argument in a Statement of Errors challenging an ALJ's non-disability determination amounts to a waiver of that argument).

must prove in order to establish disability within the meaning of the Act. *Gist v. Sec'y of H.H.S.,* 736 F.2d 352, 357 (6th Cir. 1984). An impairment will be considered nonsevere only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Sec'y of H.H.S.,* 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984)). The severity requirement is a *"de minimus* hurdle"* in the sequential evaluation process. *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988). *See also Rogers,* 486 F.3d at 243 n.2.

In determining that the lower extremity venous insufficiency was not a severe impairment, the ALJ acknowledged that plaintiff was hospitalized from November 17, 2008 to November 26, 2008 for necrotizing cellulitis of her right leg. The ALJ noted that plaintiff had no history of cellulitis and that surgery was not indicated. The ALJ took into account plaintiff's treatment with Dr. Lamarre from November 2008 through March 2009, including his March 24, 2009 findings that plaintiff presented with overall improvement, the cellulitis had resolved, and plaintiff's condition was consistent with stasis dermatitis, lymphedema, ichthyosis, and healing from cellulitis. The ALJ also noted that the records from plaintiff's August 24, 2009 treatment with Dr. Leisgang did not contain any complaints of lower extremity issues. Lastly, the ALJ noted that at this visit, plaintiff's cellulitis was termed "improved." The ALJ concluded that because plaintiff's episode of cellulitis was treated and resolved within 12 months, plaintiff did not have a severe impairment in her lower extremity. (Tr. 16).

12

Plaintiff contends the ALJ's non-severity finding is not supported by substantial evidence because it is premised on a misunderstanding of the difference between the necrotizing cellulitis, which was resolved, and chronic venous insufficiency (CVI), a condition subsequently caused by the cellulitis. Plaintiff asserts that the "damage to [her] leg from the necrotizing cellulitis and the scar tissue which formed after the infection resolved are the direct causes of [her CVI]" (Doc. 13, p. 10) and that the CVI significantly limits her work abilities as she needs to elevate her leg for several hours per day and has difficulty standing and walking for extended periods of time. Plaintiff's arguments are well-taken.

Plaintiff's severe CVI is supported by plaintiff's long-time treating physician, Dr. Leisgang. In March 2010, Dr. Leisgang reported:

> Ms. Banik suffers from chronic venous insufficiency of her right lower leg with incompetency of the deep venous system *following her hospitalization for necrotizing cellulitis* in November 2008. Since then, Ms. Banik has continued to suffer from extensive brawny edema starting from her right knee down to her right ankle which results in swelling and pain. Since the onset of this condition, and although not documented in my chart notes, it has always been my verbal recommendation to Ms. Banik that she elevate her right lower extremity above her heart level as much as possible throughout the day.

(Tr. 631) (emphasis added). Dr. Leisgang's report indicates that plaintiff's chronic venous insufficiency is more than a "slight abnormality which has such minimal effect" on plaintiff that it would not be expected with her ability to work, *Farris,* 773 F.2d at 90, and is supported by the clinical evidence of record. February 2009 examinations revealed that plaintiff's right leg was swollen, red, and painful (Tr. 436-37) and there was an annular scaley lesion and edema on her right leg. (Tr. 434). A March 2009 examination included findings that plaintiff had a chronic

13

red and small scabbed area laterally on her right anterior tibia and venous insufficiency. (Tr. 422). On August 24, 2009, plaintiff was positive for vascular edema and Dr. Leisgang commented that her right anterior tibia was red with chronic changes. (Tr. 404). January 2010 records from Dr. Leisgang indicate plaintiff was suffering from edema, varicose veins in her lower extremities with inflammation, and cellulitis. (Tr. 619). Further, along with Dr. Leisgang's findings of edema and changes to plaintiff's right anterior tibia (Tr. 404); discoloration and scabbing in her leg (Tr. 422); skin lesions (Tr. 434); and swelling (Tr. 436), he also prescribed compression hose for plaintiff and ordered home health nursing to provide wound care and administer medication. (Tr. 417-18, 440-41). Dr. Lamarre's November 19, 2008 treatment note includes the following: "I agree with leg elevation and compression[,]" (Tr. 388), indicating that Dr. Leisgang and Dr. Lamarre agreed that plaintiff should be elevating her leg. Yet, the ALJ's decision contains no discussion or even mention of any of these findings in assessing the severity of plaintiff's CVI impairment. In the absence of any mention of these clinical findings, which support Dr. Leisgang's diagnosis and opinion that plaintiff's CVI significantly limits plaintiff's functional capacity, the Court is unable to discern if the ALJ overlooked these findings or simply ignored them in making her finding that plaintiff's CVI is a non-severe impairment. Because the ALJ failed to articulate any reasons for rejecting this evidence, the Court finds the ALJ's severity decision on this score is not supported by substantial evidence.

Moreover, the ALJ's rejection of Dr. Leisgang's opinion that plaintiff's CVI causes significant limitations is not substantially supported by the record. In rejecting the treating

14

physician's report, the ALJ cited to the November 2009 lower extremity venous duplex report (Tr. 373); March 2009 records from Dr. Lamarre in which plaintiff did not report pain or discomfort in her right lower extremity and a finding that her cellulitis was "resolved" (Tr. 378); that plaintiff was not seeing a vascular specialist; that Dr. Leisgang's January 2010 opinion did not address plaintiff's lower extremity complaints; and that Dr. Leisgang's treatment records did not include notations advising plaintiff to elevate her leg. (Tr. 19). However, the ALJ failed to fully address the significance of this evidence in making her non-severity finding.

The venous duplex report cited by the ALJ revealed "[n]o evidence of venous thrombosis in plaintiff's *symptomatic* right lower extremity[,]" and that plaintiff had a "lymph node in the right femoral region." (Tr. 373) (emphasis added). The mere fact that the report indicates a lack of venous thrombosis does not equate to the ALJ's finding that plaintiff has "no incompetency of the deep venous system . . . ." (Tr. 19). Nor does the report contradict Dr. Leisgang's medical opinion that plaintiff suffers from CVI as evidenced by extensive brawny edema. Notably, the report indicates that plaintiff's right lower extremity is symptomatic and that she has a lymph node in the right femoral region. CVI can result from a variety of conditions, including, but not limited to, venous thrombosis.[5] Accordingly, the fact that venous thrombosis was not found is not determinative of whether plaintiff suffers from severe CVI.

The ALJ's reliance on Dr. Lamarre's March 2009 finding that plaintiff's cellulitis was "resolved" is similarly non-determinative on whether plaintiff suffers from chronic venous

_____

[5] *See* www.nlm.nih.gov/medlineplus/ency/article/000203.htm (last visited May 14, 2012) (CVI "occurs because of partial vein blockage or blood leakage around the valves of the veins.")

15

insufficiency. Despite resolution of plaintiff's cellulitis, she continued to have lymphedema, hyperpigmentation, stasis changes, desquamation, brawny induration, extensive cracking and dry skin, and a nummular area on the right leg, which supports Dr. Leisgang's diagnosis of chronic venous insufficiency.[6] (Tr. 378, 381). In addition, while the ALJ noted that plaintiff was not treating with a vascular specialist, the ALJ ignored evidence from Dr. Lamarre that treatment with a vascular specialist would not yield sufficient benefits: "vascular surgery evaluation probably low yield. The patient has palpable pulses and there is not much else to do . . . to manage her lower extremity issues." (Tr. 379).

The record as a whole, including treatment notes and examination findings from Dr. Leisgang and Dr. Lamarre, indicate that plaintiff's CVI is more than a "slight abnormality" and that plaintiff met the "*de minimus* hurdle" in establishing that her lower extremity CVI is a severe impairment. *Farris*, 773 F.2d at 90; *Higgs*, 880 F.2d at 862. Consequently, the ALJ's determination that plaintiff's CVI is a non-severe impairment is not supported by substantial evidence. This error is not harmless as the ALJ failed to account for any restrictions on plaintiff's ability to walk or stand, or her need to elevate her leg due to CVI in formulating plaintiff's RFC. *See Maziarz v. Sec'y of H.H.S.*, 837 F.2d 240, 244 (6th Cir. 1987) (where ALJ considers non-severe impairment in formulating RFC, failure to find impairment severe is harmless error). Accordingly, the undersigned recommends that plaintiff's first assignment of error be sustained.

---

[6] *See* my.clevelandclinic.org/disorders/venous_insufficiency/hvi_chronic_venous_insufficiency.aspx (last visited May 14, 2012) (symptoms of CVI include swelling in the legs, varicose veins, and flaking skin (desquamation)).

16

2. The ALJ did not err by failing to find that plaintiff's lower extremity problems meet Listing 4.11.

For her second assignment of error, plaintiff asserts the ALJ erred by not finding that

her CVI meets the criteria of Listing 4.11. An impairment meets Listing 4.11 if it satisfies the

following criteria:

> Chronic venous insufficiency of a lower extremity with incompetency or obstruction of the deep venous system and one of the following:
>
> A. Extensive brawny edema (see 4.00G3) involving at least two-thirds of the leg between the ankle and knee or the distal one-third of the lower extremity between the ankle and hip.
>
> OR
>
> B. Superficial varicosities, stasis dermatitis, and either recurrent ulceration or persistent ulceration that has not healed following at least 3 months of prescribed treatment.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 4.11. Plaintiff argues that the medical evidence of

record supports a finding that her CVI meets this Listing. Specifically, plaintiff identifies

findings that: she has varicose veins and venous system incompetency in her right lower

extremity (Tr. 378, 381, 386-87, 404, 419); brawny edema in her anterior tibia (Tr. 387, 404,

422, 436-37, 443, 446-47, 460); and stasis dermatitis, varicosities, and an ulceration which

persisted from November 2008 through March 2009. (Tr. 378, 381, 386-87, 404, 419, 422, 434,

436-37, 446-47, 460). However, this evidence cited by plaintiff is, standing alone, insufficient to

establish that her right lower extremity CVI meets the criteria for Listing 4.11.

With regard to the Part A criterion, the record does not demonstrate that plaintiff has

extensive brawny edema "involving at least two-thirds of the leg between the ankle and knee . . .

17

." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 4.11(A). Though the record shows plaintiff has edema[7], there is no evidence demonstrating that it involved "at least two-thirds of the leg between the ankle and knee," which is the required showing for meeting Listing 4.11A. Plaintiff argues that findings of edema encompassing her anterior tibia equates to a finding that she had edema on two-thirds of the leg between the ankle and knee. However, this argument is highly speculative and the only evidence of record that speaks to the size of the edema indicates that it was limited to a 10 x 20 centimeter area; it is silent on the extent to which edema encompasses plaintiff's leg. (Tr. 460).

Accordingly, the undersigned finds that the ALJ's did not err by failing to find that plaintiff meets Listing 4.11 and recommends that plaintiff's second assignment of error be overruled.

3.  The ALJ erred in, in part, in weighing the medical opinions of Dr. Leisgang.

Plaintiff asserts that the ALJ's decision to discount the opinions of her treating physician, Dr. Leisgang, is not supported by the evidence of record. Specifically, plaintiff contends that the objective and clinical evidence supports Dr. Leisgang's opinions regarding plaintiff's physical abilities, the severity of her lower extremity problems, and her need to elevate her leg throughout the day.

---

[7] The medical evidence shows that plaintiff had brawny induration (Tr. 378); 2+ edema, right greater than left and brawny induration involving the right leg (Tr. 381); marked induration on the right leg (Tr. 387); 1-2+ edema (Tr. 404); lymphedema, right much greater than left [and t]he right lower extremity demonstrated hyperpigmentation and stasis changes, improved from prior evaluation (Tr. 419); chronic red and small scabbed area on the right anterior tibia (Tr. 422); swollen and red right leg, but improved (Tr. 436); 3 = edema on the right calf with redness, but improved (Tr. 437); no edema or variscosities and dark, but healing, denuded skin in the right lower extremity (Tr. 443); marked induration on the right leg (Tr. 447); and erythema, warmth, and tenderness on a 10 x 20 centimeter area on the right anterior tibia. (Tr. 460).

18

"In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Sec'y of H.H.S.,* 708 F.2d 1048, 1054 (6th Cir. 1983). The weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. §§ 404.1527(c), 416.927(c)[8]; *Harris*, 756 F.2d 431 (6th Cir. 1985). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Walters*, 127 F.3d at 530. If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference. *Harris*, 756 F.2d at 435. *See also Cohen v. Sec'y of H.H.S.*, 964 F.2d 524, 528 (6th Cir. 1992). If the ALJ rejects a treating physician's opinion, the ALJ's decision must be supported by a sufficient basis which is set forth in his decision. *Walters*, 127 F.3d at 529; *Shelman*, 821 F.2d at 321.

If the ALJ does not give the treating source's opinion controlling weight, then the ALJ must consider a number of factors when deciding what weight to give the treating source's

---

[8] Regulations 20 C.F.R. §§ 404.1527 and 416.927 were amended effective March 26, 2012. The provisions governing the weight to be afforded a medical opinion were previously found at §§ 404.1527(d) and 416.927(d).

opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(i)(ii); *Wilson,* 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Wilson,* 378 F.3d at 544. The ALJ must likewise apply the factors set forth in § 404.1527(c)(3)-(6) and § 416.927(c)(3)-(6) when considering the weight to give a medical opinion rendered by a non-treating source. 20 C.F.R. §§ 404.1527(c), 416.927(c). When considering the medical specialty of a source, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).

The ALJ gave "little weight" to Dr. Leisgang's January 2010 opinion[9] because she believed it was "not supported by the diagnostic test results, the clinical findings, or the treatment history." (Tr. 19). The ALJ's decision also identified the following bases for discounting the opinion: plaintiff's prior inconsistent statement in a Function Report that she was able to lift 25 pounds (Tr. 171); the lack of abnormal medical findings furnished by Dr. Leisgang; the opinion was provided for the purpose of assisting plaintiff in obtaining disability

---

[9] The January 2010 opinion refers to a form completed by Dr. Leisgang entitled, "Medical Assessment of Ability to do Work-Related Activities (Physical)" in which he opined that due to her decreased range of motion and hip and back pain, plaintiff was limited to: lifting/carrying ten pounds occasionally and frequently; standing/walking one to two hours a day, one hour continuously; sitting two hours a day, one hour continuously; occasionally climbing, balancing, kneeling; never stooping, crouching, or crawling; and limited in her ability to reach, handle, and push/pull. (Tr. 485-86).

benefits; and the opinion was based solely on plaintiff's subjective complaints, citing to plaintiff's hearing testimony. The undersigned finds that the ALJ's decision to give "little weight" to the 2010 opinion is substantially supported by the evidence of record.

Despite Dr. Leisgang's ongoing treatment of plaintiff's lower extremity problem, the January 2010 opinion that plaintiff is limited to standing and/or walking for one to two hours total out of an eight-hour work day, one hour without interruption, is based solely on plaintiff's back and hip impairments. (Tr. 485-87). However, plaintiff testified that her leg is the primary reason she is limited in her physical abilities to walk and stand. (Tr. 46-50). Further, although the clinical and objective evidence demonstrate that plaintiff has had significant treatment for back, neck, and shoulder pain (Tr. 306-07, 393-94, 508-09, 516, 544, 546, 561) associated with plaintiff's osteoarthritis and degenerative disc disease (Tr. 257, 281, 283, 285, 300, 302, 306-08, 312-15), there is simply no evidence that *these* conditions limited plaintiff's ability to stand and/or walk as Dr. Leisgang opined. Thus, the ALJ reasonably discounted Dr. Leisgang's opinion on this basis and the ALJ's decision to afford the January 2010 opinion "little weight" is substantially supported.

Conversely, the ALJ's decision to afford "no weight" to Dr. Leisgang's March 10, 2010 report[10] is not substantially supported by the evidence of record for the reasons stated in connection with plaintiff's first assignment of error.

---

[10] The March 2010 report included a diagnosis that plaintiff "suffers from chronic venous insufficiency of her right lower leg with incompetency of the deep venous system following her hospitalization for necrotizing cellulitis[,]" a finding that as a result of the cellulitis, plaintiff "has continued to suffer from extensive brawny edema starting from her right knee down to her right ankle which results in swelling and pain[,] and Dr. Leisgang's report that "although not documented in my chart notes, it has always been my verbal recommendation to [plaintiff] that

21

For these reasons, the undersigned recommends that plaintiff's third assignment of error be sustained, in part, as the ALJ's decision to discount Dr. Leisgang's March 2010 opinion is not substantially supported by the evidence of record. This matter should be remanded with instruction to the ALJ to give appropriate weight to Dr. Leisgang's opinion as required under 20 C.F.R. §§ 404.1527(c) and 416.927(c).

4. The ALJ erred in determining that plaintiff was not fully credible

For her final assignment of error, plaintiff asserts the ALJ erred in finding that she was not fully credible. The ALJ's credibility decision must include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96-7p.[11]

---

she elevate her right lower extremity above heart level as much as possible throughout the day." (Tr. 631).

[11] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner. 20 C.F.R. § 402.35(b)(1). In *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549 (6th Cir. 2001), the court refrained from ruling on whether Social Security Rulings are binding on the Commissioner in the same was as Social Security Regulations, but *assumed* that they are. [The Court] makes the same assumption in this case." *Ferguson v. Comm'r of Soc. Sec.*, 627 F.3d 269, 272 n.1 (6th Cir. 2010) (emphasis

Where the medical evidence is consistent, and supports plaintiff's complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984). Where, however, the medical evidence conflicts, and there is substantial evidence supporting and opposing a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky v. Bowen*, 35 F.3d 1027, 1039-41 (6th Cir. 1994).

At the hearing, plaintiff testified that she had a ninth grade education and answered questions about the last fifteen years of her work history. (Tr. 33). Plaintiff stated that she worked as a nursing aide for The Sisters of Charity, a nursing home for nuns, where she did heavy lifting, including lifting individuals. *Id.* Plaintiff also worked at the postal service as a mail clerk and mail handler; she testified that a clerk sorts the mail while standing and is required to lift and carry more than 50 pounds and that a handler stands in one place and puts mail on conveyer belts and is required to lift and carry bags weight between 75 and 125 pounds. (Tr. 33-34). Plaintiff quit working at the post office and began working with Outsource Management Group, a mailing contract employer, where she worked in the mail room at Children's Hospital. (Tr. 35). At this job, plaintiff delivered mail throughout various departments at the hospital

in original).

23

using a cart and she was required to lift and carry up to 75 pounds. (Tr. 35-36). Plaintiff testified that her employment ended when the contract with the Hospital lapsed. (Tr. 36).

Plaintiff further testified that she did not believe she would be able to do the mail work now because she cannot constantly stand or do much walking. (Tr. 38-39). Plaintiff explained that, as a result of the 2008 necrotizing cellulitis, she was hospitalized and although the infection was resolved, she has residual edema and lymphedema and ongoing swelling in her lower leg. (Tr. 42-43). In order to relieve the swelling, plaintiff explained that she wears compression hose and elevates her leg above her heart, as Dr. Leisgang and Dr. Lamarre recommended, throughout the day for a total of approximately four to five hours. (Tr. 43, 45-46, 52). Plaintiff stated that she does about an hour of housework throughout the day, working at most for 30 minutes at a times after which she needs to rest and elevate her leg. (Tr. 48).

The ALJ found that the alleged severity and debilitating nature of plaintiff's subjective complaints were not fully credible. (Tr. 18). The ALJ identified the following to support her credibility determination: (1) plaintiff's complaints were not consistent with clinical findings and test results, "especially her need to elevate her legs[,]" (2) plaintiff reported that she stopped working for nonmedical reasons; and (3) she is able to do household chores, was driving on an almost daily basis until November 2008, and still has a valid driver's license. For the following reasons, the undersigned finds that the ALJ's credibility determination is not substantially supported by the evidence of record.

To support the finding that the medical evidence is inconsistent with plaintiff's "allegations of disabling symptoms, especially her need to elevate her legs," the ALJ identified

24

normal results from a December 2007 electrodiagnostic study (Tr. 258) and Dr. Fritzhand's findings in December 2007. (Tr. 225-26). In citing this evidence, the ALJ failed to acknowledge that plaintiff's lower extremity problems were primarily caused by pain and swelling associated with CVI that resulted from her necrotizing cellulitis, which did not occur until November 2008. (Tr. 42-46). Only by looking at this evidence in a vacuum, could it be viewed as a basis for discounting plaintiff's subjective complaints; however, the ALJ is required to consider the entire case record in determining an individual's credibility. *See* SSR 96-7p, 1996 WL 374186, at \*1-2 (July 2, 1996).

The ALJ also found that plaintiff's credibility was undermined because she did not follow through with Dr. Leisgang's January 25, 2010 recommendation to be treated by Dr. J. Rissover, a physical medicine and rehabilitation specialist. (Tr. 620). Again, the ALJ failed to address relevant evidence of record in making this finding. Social Security Ruling 96-7p states that "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." *See* SSR 96-7p, 1996 WL 374186, at \*1-2. Plaintiff testified at the hearing that she had not yet made an appointment to be evaluated by Dr. Rissover because she did not have her own transportation and her husband had been unable to drive her due to work obligations. (Tr. 37-38). Notably, Dr. Leisgang made the referral on January 25, 2010 (Tr. 620) and the hearing was held approximately six weeks later, on March 11, 2010. (Tr. 28). Given the short period of

25

time between Dr. Leisgang's referral and plaintiff's reasonable explanation for not yet making the appointment, the ALJ's decision to discount plaintiff's credibility on this score is not substantially supported.

Likewise, the fact that Dr. Lamarre did not pursue aggressive management of plaintiff's cellulitis, which he deemed "resolved" in March 2009, is not a basis for finding that plaintiff's subjective complaints are not credible looking at the record as a whole. Dr. Lamarre treated plaintiff specifically to address her necrotizing cellulitis. Despite his finding that plaintiff's active cellulitis infection was resolved, Dr. Lamarre found plaintiff had ongoing problems with her lower extremity, specifically, hyperpigmentation, stasis dermatitis, lymphedema, ichthyosis, and healing from severe cellulitis. (Tr. 378). Further, Dr. Lamarre proposed further aggressive treatment only if plaintiff's right distal lateral leg lesion persisted. (Tr. 379). The lack of further treatment only indicates that the lesion healed, but the record demonstrates that plaintiff continued to suffer from edema and varicose veins in her lower extremities with inflammation. In March 2010, Dr. Leisgang opined that plaintiff's cellulitis caused her CVI which was demonstrated by extensive brawny edema, swelling, and pain. (Tr. 619, 631). Likewise, the November 2008 venous duplex study finding a lymph node in the right femoral region but no venous thrombosis (Tr. 373) is not sufficient to discount plaintiff's testimony in light of the subsequent medical evidence.

To the extent the ALJ discounted plaintiff's statements on the basis that "she is not even being treated (nor has she been evaluated) by a vascular specialist" (Tr. 18), as discussed above, the record demonstrates that Dr. Lamarre opined, "vascular surgery evaluation probably low

26

yield." (Tr. 379). Further, plaintiff testified that Dr. Leisgang said there was nothing more to do

to treat her leg aside from wearing compression stockings and elevating it. (Tr. 45-46). The

ALJ's failure to mention Dr. Lamarre's opinion or plaintiff's explanatory testimony contravenes

her requirements under SSR 96-7p. "An ALJ's failure to follow agency rules and regulations

'denotes a lack of substantial evidence . . . .'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)

(citing *Blakley*, 581 F.3d at 407). Moreover, the ALJ's determination that plaintiff's testimony is

not credible with regard to her need to elevate her leg is contradicted by the treatment notes of

both Dr. Leisgang and Dr. Lamarre. (Tr. 388, 631). Accordingly, the ALJ's finding that the

medical and clinical evidence are inconsistent with plaintiff's testimony is not substantially

supported by the record evidence.

Even if the second basis provided by the ALJ for discounting plaintiff's credibility -

plaintiff's statements in the record that she stopped working for nonmedical reasons[12] - is

supported by the record, the final basis given by the ALJ for her credibility finding lacks

substantial support in the record.

The ALJ discounted plaintiff's credibility citing to plaintiff's statements that she is able

to do household chores such as laundry and cooking, and that she drove on an almost daily basis

---

[12] The ALJ cites to plaintiff's testimony that her employment as a mail handler at Children's Hospital ended for nonmedical reasons and that plaintiff reported to a psychologist that she stopped working to take care of her daughter. (Tr. 36, 219). The record further includes plaintiff's reports to the Social Security Administration that her disability began October 23, 2006 due to a ruptured disc but also that she took time off of work after her daughter had a brain aneurysm, and that while she was off work the company ended their contract and she was subsequently dismissed. (Tr. 147). In light of these various reports, it is not clear from the record whether plaintiff quit her mail clerk job, whether she was let go due to her absence, or whether her position was eliminated after the contract with the hospital ended.

until November 2008 and continues to have a valid driver's license.[13]  The evidence cited by the

ALJ consists of a November 2007 psychological evaluation, Function Reports from November

2007 and March 2008, and plaintiff's testimony.  In the November 2007 psychological

evaluation, plaintiff reported that "she tries to do chores but she can't do any heavy chores.

She's only good for a few minutes.  [S]ome days she can't do any chores."  (Tr. 221).  The

November 2007 Function Report includes plaintiff's statements that it takes her one to three

hours to complete housework, that she needs help with more rigorous cleaning, and that she

prepares her own meals, such as sandwiches and frozen dinners, and sometimes complete meals,

four to five times a week.  (Tr. 169).  In the March 2008 Function Report, plaintiff reported that

she does light cleaning depending on her pain level.  (Tr. 183).  Notably, all of these statements

pre-date the 2008 episode of necrotizing cellulitis which plaintiff and Dr. Leisgang state led to

her CVI which is the primary cause of her lower extremity problems.

     Moreover, the ALJ's cursory determination that plaintiff's credibility is undermined by

her reported daily activities fails to take into account manner in which plaintiff accomplishes

these tasks.  At the hearing, plaintiff testified that she does cook, clean, and do laundry, at most

an hour a day; that she needs to spread out the work to rest and elevate her leg; and that she does

no more than 30 minutes of work a day.  (Tr. 48).  The ALJ's selective citations to plaintiff's

reported daily activities do not fairly portray plaintiff's physical abilities.  Although the ALJ was

not bound to accept plaintiff's statements about her physical limitations, she was obligated to

---

[13]  With respect to plaintiff's driving, the fact that she regularly drove before the 2008 onset of cellulitis and had a valid license at the time of the hearing has no bearing on the credibility of her statements regarding her lower extremity where there is no contradicting evidence.

take into account the medical evidence and plaintiff's reported methods for dealing with her pain and swelling, *i.e.*, her need to take breaks from doing these activities and elevate her leg. The ALJ failed to do so in this case and, consequently, plaintiff's second assignment of error should be sustained.

In addition, the ALJ's decision failed to include consideration of all the required factors. Specifically, the ALJ did not address: (1) the location, duration, frequency, and intensity of the plaintiff's pain or symptoms; (2) factors that precipitate and aggravate the symptoms; or (3) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96-7p. The ALJ's failure to adhere to the requirements of these rules and regulations demonstrates that her credibility finding is without substantial support in the record. *Cole*, 661 F.3d at 937 (citing *Blakley*, 581 F.3d at 407). Accordingly, plaintiff's fourth assignment of error should be sustained.

### 5. This matter should be remanded for consideration of new and material evidence.

Plaintiff further asserts that this matter should be remanded under Sentence Six of 42 U.S.C. § 405(g) on the basis of new and material evidence. Specifically, plaintiff cites to a July 7, 2010 MRI (Tr. 638-39) demonstrating that plaintiff's degenerative diseases have progressed since the August 2007 MRI. (Tr. 285). Plaintiff also cites to June and August 2010 progress notes from Dr. Rissover, the physical medicine specialist to whom Dr. Leisgang referred plaintiff, which include findings that plaintiff has chronic scarring from the cellulitis. (Tr. 635-

37). The Court finds plaintiff's request well-taken and that a remand under Sentence Six is appropriate in this case.

"The district court can . . . remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Evidence is "new" if it was not in existence or available to the claimant at the time of the administrative proceeding. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Evidence is considered "material" if "there is a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Foster*, 279 F.3d at 357 (citations and internal quotation marks omitted). To show "good cause" the moving party must present a valid justification for the failure to have acquired and presented the evidence in the prior administrative proceeding. *Id. See also Oliver v. Sec'y of H.H.S.*, 804 F.2d 964, 966 (6th Cir. 1986); *Willis*, 727 F.2d at 554.

Here, the MRI results and Dr. Rissover's treatment notes are new as they were not in existence at the time of the administrative proceeding. *Foster*, 279 F.3d at 357. The evidence is also material because it directly bears on plaintiff's ability to function in a work environment and pertains to the compliance issues raised by the ALJ in her decision with respect to plaintiff's referral to Dr. Rissover. (Tr. 18).

The records from Dr. Rissover support plaintiff's statements that she is unable to make appointments on a regular basis due to lack of transportation. (Tr. 637). More importantly, Dr. Rissover's examination and the 2010 MRI results include findings of mild to moderate

restrictions in range of motion and extension; mild scoliosis; positive reverse straight leg raise on the right; crepitation on range of motion of the knees bilaterally; multiple tender areas of trigger points throughout the occipital enthesis, cervical paraspinals, upper trapezii, rhomboids, lumbar paraspinals, AC joints, and glenohumeral joints, left lateral epicondyle of the elbow, SI joints, right piriformis and right greater trochanger bursa, medial and lateral joint lines of the knees, worse on the left, and bilateral medial fat pads of the knees; multilevel discogenic disease; transitional L5 vertebral segment; slight anterior listhesis of L4 on L5; diffuse posterior disc herniation at L2-L3 with thecal sac compression; broad posterior disc bulging with a left posterior lateral disc herniation at L3-L4; and broad posterior disc herniation at L4-L5. (Tr. 636-39). Dr. Rissover also opined that plaintiff suffers from fibromyalgia syndrome. (Tr. 636-37). This evidence is material because it speaks directly to medical evidence relied on by the ALJ, namely Dr. Fritzhand's December 2007 examination findings that plaintiff has good range of motion. Further, the evidence was generated shortly after the ALJ hearing, and documents the progress of plaintiff's degenerative diseases. The MRI evidence and Dr. Rissover's examination findings, in conjunction with the other evidence of record, demonstrates there is a reasonable probability that a different disposition would result from consideration of this evidence. *Foster*, 279 F.3d at 357.

Also, good cause for remand exists. The July 2010 MRI and June and August 2010 treatment notes from Dr. Rissover were not available at the ALJ hearing. *See Fazio v. Heckler*, 750 F.2d 541, 542 -543 (6th Cir. 1984); *Wilson v. Sec'y of H.H.S.*, 733 F.2d 1181, 1182-83 (6th Cir. 1984). Plaintiff has presented a valid justification for not acquiring and presenting this

evidence in the prior administrative proceeding. Therefore, good cause exists for a remand in this matter.

Based on the above, the Court recommends that this matter be remanded under Sentence Six, as well as Sentence Four, of Section 405(g), with directions to the ALJ to consider this new and material evidence. In light of the above findings, the Court declines to reach plaintiff's statement of error with respect to whether the ALJ erred in formulating plaintiff's RFC as the ALJ's findings on remand with respect to plaintiff's RFC formulation will necessarily be affected by this Court's recommendation and the newly presented evidence.

**IV. This matter should be reversed and remanded for further proceedings.**

This case involves both a Fourth Sentence and a Sixth Sentence remand under § 405(g). Under Sentence Four of § 405(g),[14] the Court is authorized to enter "a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." Here, a remand under Sentence Four is appropriate because "all of the essential factual issues have not yet been resolved." *Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994); *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

In a Sentence Six remand,[15] the Court does not rule on the correctness of the administrative decision as in a Sentence Four determination. *Faucher*, 17 F.3d at 174 (citing *Melkonyan v. Sullivan*, 501 U.S. 89 (1991)). Instead:

---

[14] Sentence Four of § 405(g) provides, "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

[15] Sentence Six of § 405(g) provides in full:

[T]he court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding. The statute provides that following a sentence six remand, the Secretary must return to the district court to "file with the court any such additional or modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based."

*Melkonyan*, 501 U.S. at 97-98 (citations omitted). As discussed above, a Sixth Sentence remand

is warranted to allow for consideration of the July 2010 MRI and June and August 2010

treatment notes from Dr. Rissover and the impact thereon on plaintiff's physical functioning and

the ALJ's credibility finding.

Where a remand is warranted under both Sentence Four and Sentence Six, the Court may

remand under both grounds. As explained by the Eleventh Circuit:

To summarize, after reviewing § 405(g) and the applicable case law, . . . if both sentence-four and sentence-six grounds for remand exist in a disability case, the case may be remanded on both grounds. District court jurisdiction over the case continues after the entry of the remand judgment as a result of the sentence-six prong of the remand. If a claimant achieves a remand on both sentence-four and sentence-six grounds, and thereafter succeeds on remand in part due to the sentence-six ground, the claimant may return to district court to request entry of judgment after remand proceedings have been completed. In such a case, the claimant may wait until the post-remand judgment is entered before filing his EAJA application.

The court may, on motion of the Secretary made for good cause shown before he files his answer, remand the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or his decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based.

*Jackson v. Chater,* 99 F.3d 1086, 1097-98 (11th Cir. 1996). Other courts have likewise concluded that "dual basis" remands are appropriate in instances similar to the case at hand pursuant to both Sentence Four and Sentence Six. *See, e.g., Bradley v. Barnhart,* 463 F. Supp.2d 577, 583 (S.D. W. Va. 2006); *Olivero v. Barnhart,* No. 03cv1830, 2006 WL 980562, at *5-6 (D. Conn. March 24, 2006); *Joe v. Apfel,* No. 97-cv-772S, 1998 WL 683771, at *3-4 (W.D.N.Y. July 10, 1998).

Accordingly, it is recommended that this matter be reversed and remanded for further proceedings consistent with this decision under Sentence Four of Section 405(g).

It is also recommended that this matter be remanded under Sentence Six of Section 405(g) for consideration of the July 2010 MRI and June and August 2010 treatment notes from Dr. Rissover.

## IT IS THEREFORE RECOMMENDED THAT:

1. The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g); and

2. This matter be **REMANDED** pursuant to Sentence Six of 42 U.S.C. § 405(g).

Date: 6/14/12

Karen L. Litkovitz
United States Magistrate Judge

34

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

STEPHANIE BANIK,
Plaintiff

Case No. 1:11-cv-342
Barrett, J.
Litkovitz, M.J.

vs

COMMISSIONER OF
SOCIAL SECURITY,
Defendant

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).